**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Rhino Sports, Inc., an Arizona corporation; and John E. Shaffer, individually,<br><br>    Plaintiffs/Counterdefendants,<br><br>  v.<br><br>Sport Court, Inc., a Delaware corporation,<br><br>    Defendant/Counterclaimant.<br>_____<br>Connor Sport Court International, Inc., a California corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>Rhino Sports, Inc., an Arizona Corporation, John E. Shaffer, individually,<br><br>    Defendants.<br>_____ | CV-02-1815-PHX-JAT (Lead)<br>CV-06-3066-PHX-JAT (Cons)<br><br>**ORDER** |

Pending before the Court is Defendant Rhino Sports, Inc.'s Motion to Amend (Doc. # 122).[1] Rhino Sports, Inc. and John E. Shaffer (collectively referred to as "Rhino") seek to

---

[1] The introductory paragraph recites that only "Rhino Sports, Inc. moves to amend its answer." However, considering that the attorneys for Rhino Sports, Inc. also represent John E. Shaffer and that the subsequent reply was filed on behalf of both defendants, the Court assumes Mr. Shaffer joins in the motion to amend.

amend their answer to Connor Sport Court International, Inc.'s Complaint by asserting additional affirmative defenses and counterclaims for violations of the Sherman Act and the Arizona Antitrust Law, and for unfair competition.

## II.     Legal Standards

Rhino seeks leave to amend pursuant to Rules 13(f) and 15(a) of the Federal Rules of Civil Procedure. Leave to file a counterclaim is governed by Rule 13(f). Leave to file an amended answer is governed by Rule 15(a). Although technically different, "the standards for granting each are similar and thus will be considered simultaneously." *Unispec Development Corp. v. Harwood K. Smith & Partners*, 124 F.R.D. 211, 213 (D.Ariz. 1988).

A motion to amend a pleading is governed by Federal Rule of Civil Procedure 15(a), which provides:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Fed. R. Civ. P. 15(a). While the decision to grant or deny a motion to amend is within the discretion of the district court, "Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971); *United States v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001) ("A district court's discretion to deny leave to amend . . . is not absolute.") (citing *Foman*); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d. 1466, 1472 (9th Cir. 1987). "In exercising its discretion[,] . . . 'a court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities. . . . Thus, 'Rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality.'" *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987) (citations omitted); *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079

(9th Cir. 1990) (stating that leave to amend is generally allowed with "extraordinary liberality"). "This liberality . . . is not dependent on whether the amendment will add causes of action or parties." *DCD Programs, LTD. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).

The extremely liberal policy in favor of amendments, however, is subject to some limitations. The United States Supreme Court has established that motions to amend should be granted unless the district court determines that there has been a showing of: (1) undue delay; (2) bad faith or dilatory motives on the part of the movant; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; or (5) futility of the proposed amendment. *Foman*, 371 U.S. at 182; *see SmithKline Beecham*, 245 F.3d at 1052; *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798 (9th Cir. 1991); *W. Shoshone Nat'l Council v. Molini*, 951 F.2d 200, 204 (9th Cir. 1991); *Cal. Architectural Bldg. Prods.*, 818 F.2d. at 1472; *Poling v. Morgan*, 829 F.2d 882, 886 (9th Cir. 1987). "Generally, this determination should be performed with all inferences in favor of granting the motion." *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999) (citing *DCD Programs*, 833 F.2d at 186). Significantly, "[t]he party opposing amendment bears the burden of showing prejudice," futility, or one of the other permissible reasons for denying a motion to amend. *DCD Programs*, 833 F.2d at 187; *see Richardson v. United States*, 841 F.2d 993, 999 (9th Cir. 1988) (stating that leave to amend should be freely given unless opposing party makes "an affirmative showing of either prejudice or bad faith").

A motion to amend a pleading to assert a counterclaim is governed by Federal Rule of Civil Procedure 13(f). Under Rule 13(f), "[w]hen a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment." Like Rule 15(a), Rule 13(f) is interpreted liberally to settle all claims in one action. *Unispec Development Corp.*, 124 F.R.D. at 213 (citing *2001, Inc. v. Novaglas Corp.*, 60 F.R.D. 649 (E.D.N.Y. 1973)). However, leave to file a counterclaim may be denied if the counterclaim "is totally lacking in merit." *Id.* (citing *United Brick & Clay Workers v. Hydraulic Press Brick Co.*, 371 F.Supp. 818 (S.D.Mo. 1974).

1  Like the court in *Unispec Development Corp.*, this Court "will consider whether the proposed amendment and counterclaim are meritorious, *i.e.*, survive the 'futility' test and whether . . . [the] motion constitutes bad faith, dilatory action or would cause undue delay or prejudice." *Id*. at 214.

**II.  Discussion**

In opposition to Rhino's motion to amend, Connor Sport Court International, Inc. ("Sport Court") first argues that the proposed amendment is futile because Rhino released the affirmative defenses and counterclaims in whole or in part pursuant to the parties' prior settlement agreement dated March 9, 2004.  The settlement agreement provides, in part, that the parties:

> completely release, acquit, and forever discharge one another ... from and against any and all claims, demands, rights, obligations, debts, expenses, liabilities, defenses, or causes of action, whether or not alleged, recited, described, or currently asserted, whether known or unknown, suspected or unsuspected, fixed or contingent, which they have, may have, or could assert against the other.

Sport Court notes that Rhino's proposed amendment seeks redress for anti-competitive acts within the past four years and that the settlement agreement was entered into three years ago.  According to Sport Court, this shows that Rhino is improperly seeking to assert claims and defenses for alleged conduct that occurred prior to the settlement agreement and which conduct was subject to release under the terms of the agreement.  In contrast, Rhino argues that, at most, the settlement agreement bars claims that may have existed before March 9, 2004, and that it is entitled to assert claims against Sport Court based on conduct occurring thereafter.  Rhino further avers that the affirmative defenses and counterclaims rely only on conduct occurring after March 9, 2004.  At this stage of the proceedings, and considering Rhino's representations concerning the timing of the conduct made subject of the proposed affirmative defenses and counterclaims, the Court is unable to conclude, as Sport Court requests, that the proposed amendment is futile because of the March 9, 2004, settlement agreement.

Second, Sport Court argues that the proposed amendment is untimely because Rhino

was aware of the facts underlying its present antitrust counterclaims as evidenced by Rhino's answer, filed in December 2002, to Sport Court's counterclaim. In contrast, Rhino argues that the proposed amendment is timely because Sport Court's complaint was filed on December 21, 2006, and Rhino filed its original answer on February 7, 2007, less than two months ago. Rhino further argues that the proposed amendment is timely because the affirmative defenses and counterclaims rely only on conduct occurring after March 9, 2004, which conduct was not the subject of the prior proceedings between the parties. The Court agrees with Rhino, finding that the proposed amendment, which Rhino represents relates to conduct occurring after the March 9, 2004, settlement agreement, is not untimely.

Third, Sport Court argues that the proposed antitrust counterclaim fails to allege and define a proper antitrust "product market" as a matter of law. Under Ninth Circuit case law, Plaintiff must identify a relevant product market when asserting an antitrust claim. *Tanaka v. University of Southern California*, 252 F.3d 1059, 1063 (9th Cir. 2001). As the *Tanaka* court explained, a relevant product market:

> encompasses notions of geography as well as product use, quality, and description. The geographic market extends to the "'area of effective competition' ... where buyers can turn for alternative sources of supply." The product market includes the pool of goods or services that enjoy reasonable interchangeability of use and cross-elasticity of demand.

*Id.* (quoting *Oltz v. St. Peter's Community Hospital*, 861 F.2d 1440, 1446 (9th Cir. 1988)). The failure "to identify a relevant market is a proper ground for dismissing" an antitrust claim. *Id.* (citing *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1105 (9th Cir. 1999)).

Sport Court contends that Rhino has failed to reference or analyze the rule of "reasonable interchangeability" or explain why substitute products, such as concrete, wood, rubber, vinyl or painted acrylic, are not included in the narrow product market of recreational flooring. Sport Court further contends that there is "no allegation concerning cross-elasticity of demand or other consumer considerations." Thus, Sport Court concludes that "Rhino's relevant product market allegation fails to satisfy the required pleading standards as a matter

- 5 -

of law."

Countering, Rhino quotes *Twombly v. Bell Atlantic Corp.*, 425 F.3d 99, 108 (2nd Cir. 2005), which rejected the argument "that antitrust complaints merit a more rigorous pleading standard, whether because of their typical complexity and sometime amorphous nature, or because of the related extraordinary burdens that litigation beyond the pleading stage may place on defendants and the courts." Further, Rhino quotes *Todd v. Exxon Corp.*, 275 F.3d 191, 199-200 (2nd Cir. 2001), which stated that "[b]ecause market definition is a deeply fact-intensive inquiry, courts hesitate to grant motions to dismiss for failure to plead a relevant product market." As the *Todd* court explained: "To survive a Rule 12(b)(6) motion to dismiss, an alleged product market must bear a 'rational relation to the methodology courts prescribe to define a market for antitrust purposes - analysis of the interchangeability of use or the cross-elasticity of demand . . . and it must be 'plausible.'" *Todd*, 275 F.3d at 200 (citations omitted). The *Todd* court further explained:

> Cases in which dismissal on the pleadings is appropriate frequently involve either (1) failed attempts to limit a product market to a single brand, franchise, institution, or comparable entity that competes with potential substitutes or (2) failure even to attempt a plausible explanation as to why a market should be limited in a particular way.

*Id*. (citations omitted).

Based on the foregoing case law, and the federal notice pleading standards, Rhino argues that it has adequately alleged a relevant product market, that being "indoor and outdoor modular recreational flooring." Rhino also argues that Sport Court's position, that the product definition could include other alternative recreational substitutes such as concrete, wood, rubber, vinyl or painted acrylic, involves questions of fact and is inconsistent with the admissions of Sport Court's former president in these proceedings. In other words, Rhino argues that the relevant product market allegation is the same market that Sport Court's former president described and that it is "disingenuous" for Sport Court to now complain that the relevant product market is inadequately pleaded. The Court agrees with Rhino and finds that the relevant product market allegation in the proposed amendment is adequately

1 pleaded.[2]

2 Finally, Sport Court argues that the proposed antitrust counterclaim violates the *Noerr-Pennington* doctrine, which provides that "the Sherman Act does not prohibit ... persons from associating together in an attempt to persuade the legislature or the executive to take particular action with respect to a law that would produce a restraint or a monopoly." *Professional Real Estate Investors, Inc. v. Columbia*, 508 U.S. 49, 56 (1993) (quoting *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136 (1961)). Rhino counters that its antitrust counterclaim is not about efforts to influence government action; instead the Rhino states that the counterclaim concerns abusive contractual relations, improper economic interference, improper harassment of dealers and distributors, industrial espionage, and other alleged unlawful activities perpetrated with the intent to maintain a monopoly. The Court agrees, finding that the proposed antitrust counterclaim is not based on the *Noerr-Pennington* doctrine.

For the foregoing reasons, the Court finds that Sport Court has failed to show that the proposed amended answer and counterclaim will cause undue delay, is being made in bad faith or with a dilatory motive, will cause undue prejudice to Sport Court, or is futile.

Accordingly,

IT IS ORDERED that Defendant Rhino Sports, Inc.'s Motion to Amend (Doc. # 122) is GRANTED;

IT IS FURTHER ORDERED that the Clerk of Court shall file the lodged amended answer and counterclaim (Doc. # 123) as of the date of this Order.

DATED this 4th day of April, 2007.

James A. Teilborg
United States District Judge

---

[2] In addition, Sport Court's argument that Rhino's antitrust claim faces a high hurdle and is rarely successful, which Sport Court argues highlights the importance of requiring precise and accurate allegations, is insufficient to allow a finding that the antitrust claim cannot proceed as a matter of law at this stage of the proceedings.

- 7 -