**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rhino Sports, Inc., an Arizona corporation; and John E. Shaffer, individually, <br><br>　　　　Plaintiffs/Counterdefendants, <br><br>v. <br><br>Sport Court, Inc., a Delaware corporation, <br><br>　　　　Defendant/Counterclaimant. <br>_____ <br>Connor Sport Court International, Inc., a California corporation, <br><br>　　　　Plaintiff, <br><br>vs. <br><br>Rhino Sports, Inc., an Arizona Corporation, John E. Shaffer, individually, <br><br>　　　　Defendants. <br>_____ | CV-02-1815-PHX-JAT (Lead) <br>CV-06-3066-PHX-JAT (Cons) <br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

　　　　Pending before the Court is Defendant/Counterclaimant Sport Court, Inc.'s Motion for an Order to Show Cause Why Rhino Sports, Inc. and John E. Shaffer Should Not be Held in Contempt of Court, to Enforce the Injunction, and for Sanctions (Doc. # 102). Also pending is Rhino Sports, Inc., and John E. Shaffer's Motion to Modify Permanent Injunction (Doc.

# 106).¹  The Court held a hearing on the Motions on April 17, 2007.  Based on the parties' briefs, the evidence and arguments presented at the hearing, and the record as a whole, the Court now rules on the motions.

**I.  Background and Procedural History**

Connor Sport Court International, Inc., the successor-in-interest to Sport Court, Inc. (hereinafter "Sport Court") and Rhino Sports, Inc. are involved in the recreational flooring business.  Both companies employ distributor/dealer networks to promote and sell products directly to the consumer.  Also, both companies promote their goods and services on the Internet.

On September 16, 2002, after receiving a cease and desist letter from Sport Court, Rhino Sports and John E. Shaffer, president of Rhino Sports, Inc. (hereinafter collectively referred to as "Rhino Sports"), filed a declaratory action in the District of Arizona seeking a declaration that they did not violate any of Sport Court's trademarks or other rights and that the SPORT COURT mark is generic, and an order that all registrations for such mark be canceled.  Sport Court responded with a counterclaim for trademark infringement, dilution, unfair competition, and related claims concerning Rhino Sport's use of the trademark SPORT COURT and confusingly similar marks and terms.  On December 3, 2002, Sport Court filed a motion for a preliminary injunction against Rhino Sport.  The Court granted the preliminary injunction and the parties subsequently negotiated and consented to a Settlement Agreement and Mutual Release of Claims.  Pursuant to the Settlement Agreement, the parties submitted to the Court a joint motion and stipulation to a permanent injunction, as well as a stipulation of dismissal with prejudice.

In relevant part, the Permanent Injunction Order provided that:

> Rhino Sports, Inc., and John E. Shaffer, and their respective agents, servants, employees, attorneys, and other persons in

---

¹Rhino Sports, Inc., and John E. Shaffer filed an identical Motion to Modify Permanent Injunction (Doc. # 9) in the consolidated matter, CV 06-3066-PHX-JAT.

> active concert or participation with them, are permanently enjoined from directly or indirectly using in commerce the mark SPORT COURT, or any words, marks, or phrases confusingly similar thereto either alone or in combination with other words, marks, or phrases, and including any plural forms, in any style, form, or media whatsoever, including, but not limited to, on or in connection with the Internet, such as in an Internet domain name, as a sponsored link, in connection with an Internet web page, or as HTML code for an Internet website in any manner, such as the title or keyword portions of a metatag, or otherwise.

The current dispute focuses on Sport Court's allegation that Rhino Sports website, www.rhinocourts.com, has appeared as a "sponsored link" in response to a search for the term "sport court," without quotations, in the Google search engine. On December 21, 2006, Sport Court filed a petition to reopen the case and filed a new Complaint based on alleged violations of the permanent injunction. On January 18, 2007, Sport Court filed its Motion for an Order to Show Cause Why Rhino Sports and Shaffer Should Not be Held in Contempt of Court, to Enforce the Injunction, and for Sanctions. Sport Court seeks attorney's fees and costs, disgorgement of profits, an added term in the injunction mandating a fine of $5,000 per day of noncompliance, and criminal sanctions.

On February 5, 2007, Rhino Sports filed a motion to modify the permanent injunction on the grounds that the law and/or facts with regard to purchase of trademarked terms in sponsored advertising services has changed or is changing such that the Injunction should be modified. Rhino Sports seeks a modification that will permit the purchase of the words "Sport Court" (*i.e.*, next to each other) as keywords in Google's AdWords program and other similar services.

**II. Findings of Facts**

The Court finds that the following facts have been established in regard to the motions pending before the Court:

1. A Google Search of the terms "sport" and "court" (next to each other and not in quotes), performed on December 20, 2006, resulted in the display of a sponsored link for Rhino Courts which contained the following text:

- 3 -

          Rhino Courts Flooring.
          www.Rhino**Courts**.com   Custom design the backyard court today for the name you can trust!

The text of the resulting link did not contain any use of the SPORT COURT mark whatsoever.

2. Rhino Sport has employed Cybermark International, Inc. ("Cybermark"), located in Scottsdale, Arizona, as its web and search engine optimization company. Cybermark helps companies rank high on Internet search engines, such as Google, for certain keywords, so that their prospective customers can find them on the web. Cybermark's web marketing and optimization services sometimes include the purchase of certain keywords. Cybermark made purchases of, at least, the keywords "courts" and "basketball courts" in the Google AdWords program.

3. Upon entry of the Injunction, Rhino Sports advised its employees, distributor network, and other third parties, including Cybermark, of the permanent injunction; instructed them not to use the SPORT COURT mark or variations thereof; and that, to the extent any such uses occurred, they were contrary to Rhino Sports' instructions. Rhino Sports also, at various times, reiterated to Cybermark the need to comply with the permanent injunction. Cybermark was aware of the permanent injunction and its terms. Additionally, upon learning of any such prohibited uses, Rhino Sports took reasonable steps in each instance to instruct the violating parties to cease such use.

4. Upon receipt of Sport Court's December 2006 complaint, Rhino Sports inquired of Cybermark as to whether it was targeting the SPORT COURT mark or variations thereof as a keyword, and reasserted that such use should not be made. On January 2, 2007, Cybermark advised Rhino Sports that it was not doing so. At that time, Cybermark acknowledged purchasing the word "courts" as a keyword.

5. Google operates an Internet search engine, which allows Internet users to locate Web sites that match the "keywords" they enter. In response to a search, Google provides a list of links to relevant Web sites ("organic results"). In addition, Google offers a keyword-

triggered advertising program called "AdWords." AdWords enables advertisers to purchase or bid on certain keywords. When an Internet user enters those keywords in Google's search engine, the program search will yield both "Sponsored" and organic results. The "Sponsored" results appear at the top and on the margins of Google's search-results pages in areas clearly labeled as "Sponsored Links." Keyword matching services, such as AdWords, allow a purchaser some control as to how precise a user's search must be to trigger its ad within the sponsored results. Google's AdWords program provides a variety of matching options that can apply to keywords that are purchased. These options include Broad Matching, Phrase Matching, Exact Matching, Negative Matching, and Embedded Matching. Broad Matching is the default setting for keywords that are purchased through the AdWords program. When a keyword uses the broad match service, it may trigger the purchaser's ad to be displayed as a sponsored link when that keyword or terms similar to the keyword appear in a user's query. For example, if the keyword purchased is "courts," and the keyword is broad matched, the purchaser's ad could appear when users enter "basketball court," "federal court," "court flooring," or even "sport court" (with or without quotation marks).

The embedded match service is a sophisticated form of keyword matching that allows a keyword purchaser to prevent their ad from appearing in relation to a certain phrase or other exact matches. For example, if the keyword "courts" were purchased, the purchaser could utilize the broad match service and embedded match service together. This would allow the purchaser the benefits of the broad match program while also allowing the purchaser to prevent its ad from appearing when a user queries a specified exact phrase or term. For example, if the purchaser of "courts" excludes "SPORT COURT" (with or without quotation marks) in its Google AdWords profile, a query for "SPORT COURT" (with or without quotation marks) will not result in the purchasers ad appearing as a sponsored link.

6. By default, Google only returns pages, in its organic search results, that include all of a user's entered search terms. There is no need to include an "and" between terms. If a user searches for "sport court" (without quotation marks), then Google does a search for

1 websites containing the terms "sport" and "court."  However, if a user seeks to only search for websites with a specific phrase such as "sport court" (with quotation marks), then quotation marks can be used to exclude Web sites that do not have those terms together.

7. A current Google search of the term "sport court" (next to each other, with or without quotes) could yield Rhino Sports' sponsored ad or the "www.RhinoCourts.com" web site address as a sponsored link result even if Rhino Sports is not purchasing the mark SPORT COURT or variations thereof.  There are a number of reasons why the sponsored ad or its web site address might appear as a sponsored link for the term "sport court" even though Rhino Sports may not be currently purchasing any forms of this term in the Google Adwords program, including any plural variation thereof.  The reasons are attributable to the nature of Google's broad match service and algorithms, over which Rhino Sports has limited control.

8. According to Google, the term "sport court" is a relevant variation of the keyword "basketball court."  As confirmed by Google, the fact that a party purchases a keyword does not guarantee that it will appear as a sponsored link when searching that keyword.  Conversely, the fact that a party does not purchase a keyword does not guarantee that it will not appear as a sponsored link for a search containing that word.  Whether a party appears as a sponsor depends upon a variety of factors, including the frequency with which the search term is used by consumers, the amount paid for and type of sponsorship, and the results of Google's expanded broad match search.  Because these factors may change, a party can appear as a sponsor link one day and not appear the next day, or even appear for terms that were never purchased.

9. In April 2004, following the Court's entry of the permanent injunction, Google informed its customers of internal policy changes to the use and sale of keywords in its AdWords program.  Specifically, Google began to allow U.S. and Canadian advertisers to bid on any keyword, including trademarked terms. Previously, Google had granted requests from advertisers to bar competitors from bidding on their trademarks.  Google's policy shift

1  indicates that it will only review trademark complaints that relate to text appearing in
2  sponsored listings on its Web site and those of its partners. Accordingly, Google's trademark
3  complaint policy now provides:

> When we receive a complaint from a trademark owner, we only investigate the use of the trademark in ad text. If the advertiser is using the trademark in ad text, we will require the advertiser to remove the trademark and prevent them from using it in ad text in the future. Please note that we will not disable keywords in response to a trademark complaint.

10. Recent Google searches performed for "Sport Court," "Sports Courts," "Sport Courts," and "Sports Court" (all next to each other and not in quotes) have resulted in the display of sponsored links for Versa Court, Snap Sports, Game Courts, LewisSurface.com, CentaurFloors.com and BasketballHoopsUnlimited.com, all of which are competitors of Rhino Sports and Sport Court. However, there is no evidence to indicate that any of the competitors sponsored ad appearances were the result of keyword purchases of the mark SPORT COURT or confusingly similar variations.

**III. Conclusions of Law and Analysis**

    **A. Contempt**

        **1. Legal Standard**

In the present context, civil contempt refers to a "party's disobedience to a specific and definite order by failure to take all reasonable steps within the party's power to comply." *In re Dual-Deck Video Cassette Recorder Antitrust Litigation*, 10 F.3d 693, 695 (9th Cir. 1993). The standard for finding a party in civil contempt in the Ninth Circuit is well established: "[t]he moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." *FTC v. Affordable Media, LLC.*, 179 F.3d 1228, 1239 (9th Cir. 1999) (citations omitted). "[A] person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation of the [court's order]." *In re Dual-Deck Video Cassette Recorder Antitrust*

- 7 -

1  *Litigation*, 10 F.3d at 695 (quotations omitted; brackets in orig.). Additionally, "[s]ubstantial compliance with the court order is a defense to civil contempt, and is not vitiated by a few technical violations where every reasonable effort has been made to comply." *Id*. (quotations omitted).

The basic issue is whether Rhino Sports violated the permanent injunction beyond substantial compliance when Rhino Sports broad matched keywords using Google's AdWords program that led to its sponsored link appearing when the term "Sport Court" (without quotations marks) was queried. At issue is not whether Rhino Sports' current activities infringe Sport Court's trademark, but whether Rhino Sports substantially violated the permanent injunction. Although, Sport Court is not required to muster all of the evidence it would need to make out an original case of infringement in order to prove contempt, it is required to muster clear and convincing evidence to indicate that Rhino Sports violated the permanent injunction beyond substantial compliance, and that the violation was not based on a good faith and reasonable interpretation of the order. *See, e.g., Wolfard Glass Blowing Co. v. Vanbragt*, 118 F.3d 1320, 1322 (9th Cir. 1997).

**2.    Sport Court Has Failed to Show by Clear and Convincing Evidence that Rhino Sports Substantially Violated the Permanent Injunction**

The permanent injunction enjoined Rhino Sports from using the mark "SPORT COURT" or any confusingly similar words, marks or phrases "on or in connection with the Internet, such as in an Internet domain name, as a sponsored link, in connection with an Internet web page, or as HTML code for an Internet website in any manner, such as the title or keyword portions of a metatag, or otherwise." Sport Court has presented no evidence that Rhino Sports has used SPORT COURT or any variation thereof in any Internet advertising text, as an Internet domain name, on its web site, or on any of its web pages as HTML code or as a metatag.[2] Based upon the lack of evidence of these types of violations, the Court is

---

[2]Hypertext Markup Language ("HTML") is the code used to create web page content. *See Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174

- 8 -

1 left to decide the motion for contempt based upon the narrow issue of sponsored link
2 prohibitions within the permanent injunction.

3     With regard to keyword purchasing, the permanent injunction serves as no bar to
4 Rhino Sports' use of any generic terms such as "courts" or "basketball court."  Sport Court
5 cites no legal authority establishing that a consumer's use of certain search terms in a Google
6 or other web search, that generates a sponsored ad link which reflects no use of the mark at
7 issue in terms of keyword use, metatag use or ad text use, constitutes use of a mark under the
8 Lanham Act.[3]  Indeed, the case law cited by Sport Court involves some actual use of the
9 mark at issue, either as a keyword, in a metatag, or in the ad text itself—something that has
10 not been established here.  To establish trademark infringement under the Lanham Act, the
11 plaintiff must establish a defendant's "use in commerce" of the mark.  15 U.S.C. § 1114(1).
12 The Lanham Act provides definitions of "use in commerce" applicable to goods and services,
13 to wit:

14-17     a mark shall be deemed to be in use in commerce (1) on goods when (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and (B) the goods are sold or transported in commerce, and (2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce . . .

18 15 U.S.C. § 1127.

19     Sport Court has not established by clear and convincing evidence any use by Rhino
20 Sports of the SPORT COURT mark, or variations thereof, as contemplated by the permanent
21 injunction when Rhino Sports purchased the terms "courts" and "basketball court."  The

---

F.3d 1036, 1044 (9th Cir. 1999).  Metatags are HTML code not visible to web users, but used by search engines in determining which sites correspond to the search keywords entered by a web user.  *Id.* at 1061 n. 23.

[3]Use, as set forth in the Lanham Act, is the same use that is at issue in the permanent injunction.  A proper understanding of "use in commerce" as defined by the Lanham Act will assist in a proper interpretation of the permanent injunction.

- 9 -

1  Court concludes that a contrary interpretation of the permanent injunction would not be
2  reasonable because it would preclude Rhino Sports from using these generic terms as
3  keywords. *See America Online, Inc. v. AT & T Corp.*, 243 F.3d 812, 823 (4th Cir 2001)
4  ("functional use of words within the heartland of their ordinary meaning cannot give rise to
5  a trademark").

6      With regard to the purchase of the SPORT COURT mark or variations thereof, the
7  Court holds that Sport Court has not carried its burden of proving by clear and convincing
8  evidence that Rhino Sports or Cybermark purchased the SPORT COURT mark or any
9  variations thereof, including plurals. Given this holding, the issue of whether Cybermark is
10 an agent of Rhino Sports need not be addressed by the Court.

11     Finally, Rhino Sports has shown that it made reasonable efforts to ensure compliance
12 with the permanent injunction. Rhino Sports instructed Cybermark and other third parties
13 not to use or target the SPORT COURT mark or any variations thereof upon the entry of the
14 permanent injunction. Considering the foregoing, the Court concludes that Sport Court has
15 failed to meet its burden of showing by clear and convincing evidence that Rhino Sports
16 violated the permanent injunction beyond substantial compliance or that the violation was
17 not based on a good faith and reasonable interpretation of the order. *Wolfard Glass Blowing*
18 *Co.*, 118 F.3d at 1322. Therefore, it is the holding of the Court that Rhino Sports is not in
19 contempt of court.

20     **B. Modification of the Injunction**
21         **1. Legal Standard**

22     Rhino Sports moves the Court to modify the permanent injunction by eliminating the
23 prohibition on use of the words "SPORT COURT" or variations thereof as Google AdWords.
24 According the Federal Rules of Civil Procedure "on motion and upon such terms as are just,
25 the court may relieve a party or a party's legal representative from a final judgment, order,
26 or proceeding . . . if it is no longer equitable that the judgment should have prospective
27 application." Fed. R. Civ. P. 60(b)(5). In order to obtain modification of the permanent
28

- 10 -

1 injunction under Rule 60(b)(5), Rhino Sports:

> must satisfy the initial burden of showing a significant change either in factual conditions or in the law warranting modification of the decree. The district court must then determine whether the proposed modification is suitably tailored to resolve the problems created by the changed factual or legal conditions. . . . [Movant] must additionally show that the changed conditions make compliance with the consent decree more onerous, unworkable, or detrimental to the public interest. A court should not ordinarily modify a decree, however, where a party relies upon events that actually were anticipated at the time it entered into a decree.

*United States v. Asarco*, 430 F.3d 972, 979 (9th Cir. 2005) (citing *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384-85, 391 (1992)) (other citations and quotations omitted); *see also Bellevue Manor Assocs. v. U.S.,* 165 F.3d 1249, 1252-53 (9th Cir. 1999) (discussing standard and noting applicability of standard to judgment concerning copyright and trademark rights). Acting in equity, the district court is vested with broad discretionary power, and "must take all the circumstances into account in determining whether to modify or vacate a prior injunction or consent decree." *Bellevue Manor Assoc. v. United States*, 165 F.3d 1249, 1256 (9th Cir. 1999).

Here, the parties stipulated to the permanent injunction; therefore, even less basis exists to disrupt such an order to which all parties agreed. *See Bellevue*, 165 F.3d at 1253 n.4. Moreover, the issue of sponsored link advertising was actually anticipated at the time the permanent injunction issued, which also weighs against modification.

### 2. There Has Been No Significant Change in Law to Warrant Modification

Rhino Sports argues that the law has changed concerning Google AdWords advertising because: (1) AdWords do not cause consumer confusion; (2) AdWords are not a trademark use; and (3) no court has found trademark infringement liability for use of AdWords.

Elaborating, Rhino Sports argues that since entry of the permanent injunction, a number of courts have addressed the issue of trademark keyword purchase and initial interest

- 11 -

confusion[4] and held that as a matter of law "use [of] plaintiff's marks through Google's Ad Word Program or in the key word metatags for its website . . . . do[es] not result in any actionable likelihood of confusion under the Lanham Act." *J.G. Wentworth, S.S.C. Limited Partnership v. Settlement Funding LLC*, 2007 WL 30115, Civ. No. 06-0597 at *6 (E.D.Pa. January 4, 2007). In finding no actionable confusion—initial interest or otherwise—the *J.G. Wentworth* court reasoned that "[d]ue to the separate and distinct nature of the links created on any of the search results pages in question, potential consumers have no opportunity to confuse defendant's services, goods, advertisements, links or websites for those of plaintiff." *Id*. at *8.

However, the most relevant Ninth Circuit decisions of *Brookfield Communications Inc. v. West Coast Entertainment Corp.,* 174 F.3d 1036 (9th Cir. 1999) and *Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 354 F.3d 1020 (9th Cir.2004) indicate that, within the Ninth Circuit, there has not been a significant change in the law with respect to initial interest confusion. In *Playboy Enterprises*, the most recent case on point, the defendants used various lists of terms to which they keyed advertiser's banner ads. "Playboy" and "playmate" were among the terms to which the banner ads were keyed. 354 F.3d at 1023. Notably, the banner ads to which the terms were keyed were unlabeled with any source-indicia. The court noted that "we are not addressing a situation in which a banner advertisement clearly identifies its source with its sponsor's name," which, in the Ninth Circuit's view, "might eliminate the likelihood of initial interest confusion . . .." *Id.* at 1030, n. 43. In light of this precedent, the Court notes that there remains the possibility that initial interest confusion still may result in this type of case. The *Playboy* holding does not indicate that the Ninth Circuit has concurred with the ruling of other courts concluding that initial

---

[4]*J.G. Wentworth, S.S.C. Limited Partnership v. Settlement Funding LLC*, 2007 WL 30115, Civ. No. 06-0597 at *7-8 (E.D.Pa. January 4, 2007); *GEICO v. Google, Inc.*, 2005 WL 1903128, Civ. No. 1:04CV507 *7, 77 U.S.P.Q.2d 1841 (E.D. Va. August 8, 2005).

1 interest confusion is never present is these types of cases. Playboy only advances the
2 proposition that sponsored links that clearly identify their sources to consumers *might* avoid
3 a finding of likelihood of initial interest confusion.

4 The Court has given careful consideration to the arguments and authorities presented
5 by Rhino Sports, as well as to the current precedent in the Ninth Circuit. In light of the
6 uncertain state of the law, and the fact that, within the Ninth Circuit, there has not been a
7 significant change, the Court does not find Rhino Sport's arguments sufficient to warrant a
8 finding of a significant change in the law. While there has been some indication of a possible
9 change within the Ninth Circuit, a finding of a significant change by this Court would be
10 premature and ill-advised. Additionally, when two competitors both rely on a distributor
11 network composed of multiple distributors with various names and various websites, it is the
12 opinion of this Court that a finding of initial interest confusion may still be possible.

13 Rhino Sports also argues that since entry of the permanent injunction, a number of
14 courts have addressed the issue of trademark use[5] and have held, or can be read to suggest,
15 that a defendant is not engaged in the requisite "use" of a trademark or other mark unless the
16 defendant uses the mark to identify the source of its own goods or services. The Court notes
17 that while other courts have ruled that keyword use of a trademark does not constitute "use"
18 in commerce under the Lanham Act, the Ninth Circuit has not squarely addressed this issue.
19 *See Rescuecom Corp. v. Google, Inc.*, 456 F.Supp.2d at 402 n.5 (noting that "none of [the
20 Ninth Circuit and other] cases address whether the defendant's use of the trademark at issue
21 is, in the first place, a trademark use"). For example, in *Playboy Enterprises,* the court
22 focused on the likelihood of confusion prong of the analysis, as there was "[n]o dispute" as
23 to whether there was "use in commerce" by the defendant. 354 F.3d at 1024. The Court

---

[5]*RescueCom Corp. v. Google, Inc.*, 456 F. Supp. 2d 393, 401-403 (N.D.N.Y. 2006); *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 431 F. Supp. 2d 425, 427 (S.D.N.Y. 2006); *see also 1-800 Contacts v. WhenU.Com, Inc.*, 414 F.3d 400, 409 (2d Cir.2005).

- 13 -

concludes that, unless the Ninth Circuit expressly analyzes and holds that keyword use of a trademark does not constitute "use in commerce," then, regardless of whether or not such use is a "use in commerce" under the Lanham Act, there has been no change in the Ninth Circuit on this matter since the permanent injunction was ordered.

Once again, the Court has given careful consideration to the arguments and authorities presented by Rhino Sports. However, in light of the uncertain state of the law, the Court does not find Rhino Sport's arguments sufficient to warrant a finding of a significant change in the law in regard to keywords and trademark use.

Finally, Rhino Sports argues that because no court has found trademark infringement liability for use of AdWords, there has been a significant change in the law. However, if no court has indeed found liability, how can this evidence a significant change in the law when this was the exact state of the law at the time the permanent injunction was handed down? Additionally, even if no liability has been found in any case, this does not indicate that the law will not impose liability in these situations, only that no situation may have been presented in which liability can be imposed.

In light of all of the above, the Court concludes that Rhino Sports has failed to meet its burden of establishing a significant change in the law that would warrant modification of the permanent injunction.

### 3. There Has Been No Change in Facts to Warrant Modification

Rhino Sports argues that Sport Court's competitors are allowed to use its marks as AdWords, while Rhino Sports cannot, which is unfair to Rhino Sports and reflects a change in circumstances that would warrant modifying the permanent injunction. However, competitors engaged in conduct that would violate the permanent injunction, if engaged in by Rhino Sports, does not relieve Rhino Sports of its obligations under the permanent injunction. Rhino Sports consented to the terms of the permanent injunction while other competitors did not. Clearly Rhino Sports contemplated, at the time of the permanent injunction, that it may be competitively disadvantaged as a result of the terms of the

1 permanent injunction. The Court is not persuaded that mere competitive disadvantage
2 signifies a significant change in the facts as to warrant a modification of the permanent
3 injunction. Additionally, Rhino Sports points out that a distributor of Sport Court is engaged
4 in the same conduct vis a vis Rhino Sports that Sport Court seeks to forbid to Rhino Sports.
5 Again, neither Sport Court, nor its distributors, are bound to the restrictions placed on Rhino
6 Sports in the permanent injunction. The fact that other parties are not bound to the terms of
7 the permanent injunction does not indicate that enforcement would be unfair to the
8 consenting restricted party.

9 Additionally, Rhino Sports argues that Google's policy change which now permits
10 companies to purchase trademarks as keywords is a significant change in the facts warranting
11 modification of the permanent injunction. While it has not been established that Rhino
12 Sports is currently making any such purchase of the mark SPORT COURT, it appears as
13 though its competitors may be, or at least that they may do so given Google's new policies.
14 It is the opinion of the Court that the policy change implemented by Google is merely
15 Google's perception of the current state of the law. Simply because Google has taken a
16 position in this uncertain area does not support the conclusion that no actions can be taken
17 by trademark owners against competitors that purchase their trademarks as AdWords. The
18 Court holds that this is not a significant factual change that warrants modification of the
19 permanent injunction.

20 Accordingly, there is no significant change in law or facts warranting a modification
21 of the Permanent Injunction Order. The Court concludes that the permanent injunction should
22 not be modified to permit Rhino Sports to use the SPORT COURT mark or any variation
23 thereof as a keyword.

24 **IV. Conclusion**

25 **IT IS ORDERED** that Sport Court, Inc.'s Motion for an Order to Show Cause Why
26 Rhino Sports, Inc. and John E. Shaffer Should Not be Held in Contempt of Court, to Enforce
27 the Injunction, and for Sanctions (Doc. # 102) is DENIED;

**IT IS FURTHER ORDERED** that Rhino Sports, Inc., and John E. Shaffer's Motion to Modify Permanent Injunction (Doc. # 106) in CV 02-1815-PHX-JAT and Rhino Sports, Inc., and John E. Shaffer's Motion to Modify Permanent Injunction (Doc. # 9) in CV 06-3066-PHX-JAT are DENIED;

**IT IS FURTHER ORDERED** that there exists no just reason for delay and, under Fed. R. Civ. P. 54(b), final judgment on the matter of contempt is entered in favor of Rhino Sports, Inc., and John E. Shaffer.

DATED this 2nd day of May, 2007.

James A. Teilborg
United States District Judge

- 16 -